UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD ARTHUR KIRKHAM,<br>Plaintiff,<br>v.<br>BILL ELFO, *et al*.,<br>Defendants. | CASE NO. 2:26-cv-01456-JCC-GJL<br><br>ORDER DECLINING SERVICE OF AMENDED COMPLAINT |

Plaintiff Richard Arthur Kirkham, proceeding *pro se*, initiated this action under 42 U.S.C. § 1983. Dkt. 1. On June 17, 2026, the Court screened and declined to serve Plaintiff's initial Complaint. Dkt. 1. The Court identified several deficiencies that prevented Plaintiff from proceeding with his claims, instructed Plaintiff on how they may be cured, and granted him an opportunity to cure the identified deficiencies. *Id.* Plaintiff thereafter filed an Amended Complaint. Dkt. 7.

Having screened Amended Complaint, the Court finds several deficiencies that must be cured if Plaintiff intends to proceed in this action. As such, the Court **DECLINES** to direct service and, instead, the Court again affords Plaintiff another opportunity to cure the identified deficiencies by filing a second amended complaint on or before **September 28, 2026**.

# I. BACKGROUND

## A. Initial Complaint and Screening Order

In his initial Complaint, Plaintiff named Whatcom County and the following individuals as Defendants: Bill Elfo, Donnell Tanksley, Wendy Jones, Sergeant Otten, Sergeant Gegoier, Sergeant Bobadilla, and Deputy Remy. Dkt. 1 at 2. Defendants Elfo, Tanksley, and Otten were named only as official-capacity Defendants, and the remaining individuals were sued in their official as well as individual capacities. *Id.*

As for the factual basis of his claims, Plaintiff alleged that, after a state court restricted his telephone privileges in October 2023, Whatcom County Jail ("WCJ") staff placed him in administrative segregation pursuant to jail policy and kept him there for approximately 155 days without notice, a hearing, an opportunity to challenge his placement, a written statement of reasons, an appeal process, or periodic review. *Id.* at 3–7. Plaintiff further alleged that Defendant Remy threatened that Plaintiff would be transferred to the more restrictive "total Isolation" if he filed a grievance about his placement in administrative segregation. *Id*. at 6–7. Based on these allegations, Plaintiff asserted § 1983 claims for violations of the First and Fourteenth Amendments, along with numerous state-law causes of action. *Id.* at 7–10.

On June 17, 2026, the Court screened and declined to serve the initial Complaint. Dkt. 5. Although the Court observed that Plaintiff's factual narrative regarding his placement in administrative segregation and alleged retaliation was generally understandable, it concluded that the Complaint contained several pleading deficiencies. *Id.*

Specifically, the Court found:

1. The initial Complaint asserted numerous overlapping constitutional and state-law claims without clearly identifying which facts supported each cause of action or each Defendant's liability;
2. Plaintiff relied excessively on exhibits rather than pleading the supporting facts within the body of the initial Complaint;

3. Plaintiff failed to allege sufficient facts demonstrating the personal participation of Defendants Jones, Gegoier, and Bobadilla; and

4. Plaintiff's official-capacity claims against the individual Defendants were redundant of his claims against Whatcom County.

*Id.* at 3–8. The Court granted Plaintiff leave to amend so that he may attempt to correct these deficiencies. *Id.* at 9.

**B. Amended Complaint**

Plaintiff filed an Amended Complaint on July 16, 2026. Dkt. 7. Plaintiff names Whatcom County and the following individuals as Defendants: Bill Elfo, Donnell Tanksley, Sergeant Bobadilla, and Deputy Remy. *Id.* at 2. The Amended Complaint proceeds on ostensibly the same factual basis as the initial Complaint but differs in its organization of claims. *Id.* Specifically, the Amended Complaint is organized into fifteen claims that, although not always clearly delineated, appear to assert violations of the First and Fourteenth Amendments to the United States Constitution, as well as numerous state law claims. *Id.* at 3–19. Plaintiff again seeks compensatory and punitive damages as relief for his claims. *Id.* at 19.

## II. SCREENING STANDARD

Under the Prison Litigation Reform Act of 1996, the Court must screen proposed complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. §1915(e)(2)(B); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Dismissal on these grounds constitutes a "strike" under 28 U.S.C. § 1915(g).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). Even *pro se* pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A plaintiff must set forth specific, plausible facts to support their claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–83 (2009).

## III. DISCUSSION

Upon review of the Amended Complaint, the Court finds that Plaintiff has cured some, but not all of the deficiencies identified in the prior Screening Order. In particular, Plaintiff has omitted redundant official capacity defendants from his amended pleading, but, similar to his initial Complaint, the Amended Complaint includes "numerous overlapping claims, alternative theories of liability" that "confuse[] and dilute[] the nature and scope of his claims against each defendant." Dkt. 5 at 4.

In addition, Plaintiff has asserted numerous legally deficient claims in the Amended Complaint, including his First Amendment retaliation claim and several state law claims. Each of these deficiencies are discussed in greater detail below and render the Amended Complaint unsuitable for service upon Defendants.

**A. Federal Rule of Civil Procedure 8**

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). While lengthy pleadings do not automatically violate Rule 8's requirement to provide a short, plain statement demonstrating entitlement to relief, pleadings that are "argumentative, prolix, replete with redundancy, [or] largely irrelevant" do not comply with the Rule. *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

In Claims One, Two, Three, Six, Seven, and Eight, Plaintiff alleges his placement in administrative segregation occurred without, or in violation of, "due process." Dkt. 7 at 3–13. It is unclear, however, whether Plaintiff intends to allege substantive or procedural due process claims, or both. Thus, these claims do not comply with Rule 8.

Pretrial detainees have a substantive due process right to be free from punishment before adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To state a substantive due process claim based on punishment, a plaintiff must allege facts demonstrating a state action that (1) resulted in more than *de minimis* harm and (2) was intended to punish. *See Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004). Not every inconvenience or restriction during pretrial detention amounts to unconstitutional punishment. Minor restrictions or temporary, short-term losses of privileges, for example, are considered *de minimis* and do not rise to the level of a constitutional violation. *Peyton v. Cnty. of Ventura*, No. 17-cv-3202-VAP-AJW, 2017 WL 6816355, at *2–3 (C.D. Cal. Aug. 23, 2017), *report and recommendation adopted by* 2018 WL

317791 (C.D. Cal. Jan. 3, 2018) (collecting cases). Intent to punish "may be inferred from the lack of rational relation to a legitimate nonpunitive government interest." *Houston v. Maricopa, Cnty. of, Arizona*, 116 F.4th 935, 941 (9th Cir. 2024).

Pretrial detainees also have a right to procedural due process when subjected to more severe conditions of confinement than other detainees. *Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018) (*Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996)). To state a procedural due process claim, a plaintiff must allege facts demonstrating "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

Generally, due process claims by pretrial detainees require a showing that a defendant acted with at least reckless disregard for inmates' health or safety. *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021). And, as with all § 1983 claims, a plaintiff must allege facts demonstrating liability for the due process claim is based on the defendant's own culpable conduct. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Although pled as separate causes of action, Plaintiff's various due process claims do not clearly assert distinct due process injuries and, instead, appear to advance different legal theories for why particular Defendants should be held liable for ostensibly the same constitutional deprivation. The purpose of a pleading is to provide a clear, concise, and direct presentation of claims and operative facts, not the development of all possible legal arguments. And the manner in which Plaintiff has presented his Amended Complaint confuses and obscures the due process claims he intends to pursue. That is, the disjointed and repetitive presentation of operative facts within arbitrarily separated claims makes it difficult to determine that nature of Plaintiff's due

process claims against each Defendant. This is substantially the same pleading deficiency identified in the Court's prior Screening Order. *See* Dkt. 5 at 4–5.

By contrast, Claim Ten demonstrates the type of pleading contemplated by Rule 8. There, Plaintiff alleges that Defendant Remy threatened to transfer Plaintiff to "total isolation" in retaliation for challenging his placement in administrative segregation, thereby violating Plaintiff's First Amendment rights. Dkt. 7 at 14–16. Claim Ten focuses on the factual content allegedly causing the asserted constitutional violation and is not segmented into separate claims resulting in the same alleged injury. *Id.* As a result, Claim Ten provides fair notice of the constitutional right at issue, the Defendant against whom the claim is asserted, and the factual basis supporting the claim, which is the purpose of Rule 8. *See Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996).

In sum, the Amended Complaint does not permit the Court to readily determine which separately numbered due process claims are intended to present distinct causes of action against each Defendant and which merely present differing legal arguments for why Plaintiff believes he is entitled to relief for the same underlying due process injury. And, as the Court instructed previously:

> [T]o avoid obscuring potentially meritorious constitutional claims under § 1983, Plaintiff should focus any amended complaint on those claims for which he can allege facts demonstrating a violation of a specific constitutional right by a particular defendant or defendants. Plaintiff should avoid asserting overlapping claims, duplicative causes of action, or alternative theories of liability that arise from the same alleged conduct unless he can clearly explain the particular factual basis for each defendant's liability under the governing legal standards.

Dkt. 5. at 4. Failure to file an amended pleading that adheres to the requirements of Rule 8 may result in a recommendation that this action be dismissed. *See Swearington v. California Dep't of Corr. & Rehab.*, 624 F. App'x 956, 959 (9th Cir. 2015) (affirming dismissal without leave to

amend where *pro se* prisoner plaintiff "did not cure the complaint's deficiencies despite the district court's specific instructions about how to do so").

**B. First Amendment Retaliation**

Although Plaintiff has cured the previously identified Rule 8 defects in his First Amendment retaliation claim and clearly stated the grounds upon which Claim Ten is based, Plaintiff has not alleged a viable First Amendment retaliation claim against Defendant Remy.

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

To satisfy the "because of" element, a plaintiff must allege facts showing his protected conduct was "the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citations and quotations omitted). At the pleading stage, it may be sufficient for a plaintiff to allege that an adverse action was taken soon after a defendant learned of his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Even so, conclusory allegations and "[m]ere speculation that defendants acted out of retaliation [are] not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In other words, the facts alleged must support a reasonable inference that retaliation did occur, as opposed to merely showing an order of events wherein retaliation could have occurred. *See also West v. Ulloa*, No. 2:17-cv-04892-VBF-KES, 2019 WL 8108724, at *7 (C.D. Cal. Dec. 5, 2019), *aff'd*, No. 20-56167, 2022 WL 17412865 (9th Cir. Dec. 5, 2022) (finding *pro se* plaintiff's retaliation claim deficient because, despite suspect timing, the factual allegations were insufficient to support inference of retaliatory animus beyond speculative level); *Escamilla v.*

*City of Santa Ana*, No. 8:19-cv-02229-JAK-ADS, 2021 WL 4317974, at *1 (C.D. Cal. Sept. 22, 2021), *aff'd*, No. 21-56326, 2023 WL 7040313 (9th Cir. Oct. 26, 2023) (same).

Here, Plaintiff alleges that Defendant Remy engaged in retaliation by threatening that Plaintiff would be transferred to total isolation if he filed a grievance challenging his placement in administrative segregation. Dkt. 7 at 14–16. In particular, Plaintiff alleges that he informed Defendant Remy that he wanted to file a grievance challenging his placement in administrative segregation, explaining the placement did not accomplish the stated purpose of preventing Plaintiff from accessing a telephone. *Id.* at 14–15.

According to Plaintiff, Defendant Remy responded by stating his understanding of the proposed grievance was that Plaintiff believed his current placement was not "restrictive enough" and that Plaintiff should instead be moved total isolation. *Id.* at 15. Defendant Remy further stated that he would provide Plaintiff with a grievance form but adding that "if you decide you want to follow through and grieve it…it will make things worse for you." *Id.* Plaintiff alleges that Defendant Remy's statements threatening total isolation and worsening conditions discouraged him from pursuing the grievance, thereby chilling his First Amendment activity. *Id.* at 16.

While Plaintiff characterizes Defendant Remy's alleged statements as threats and alleges a chilling effect, the factual basis of his claim does not support a reasonable inference of retaliation. That is, the facts alleged here do not plausibly show that Defendant Remy threatened more restrictive housing <u>because</u> Plaintiff sought to exercise his right to file a grievance. Rather, construed liberally, the alleged threats merely warned Plaintiff of a potential unanticipated consequence of the specific grievance he intended to pursue, namely that if Plaintiff challenged his placement in administrative segregation on the ground that it did not prevent him from accessing a telephone, jail officials could respond to the grievance by placing Plaintiff in more

restrictive housing where no telephone was accessible. That Plaintiff, having received this warning from Defendant Remy, was deterred from pursuing his grievance, does not automatically convert the warning to unlawful retaliation.

Indeed, Plaintiff does not allege, for example, that Defendant Remy threatened to place Plaintiff in total isolation as punishment for filing a grievance against Defendant Remy or another jail official, or that Defendant Remy otherwise indicated an intent to punish Plaintiff for his desire to use the grievance process. *C.f. Brodheim*, 584 F.3d 1271 (finding triable issues of fact where prison officials allegedly threatened punishment that was motivated by inmate's use of grievance process and/or the alleged "disrespectful" language contained such grievances). To the contrary, Plaintiff's allegations reflect that Defendant Remy explicitly stated that he would provide Plaintiff with the form necessary to file his grievance (thus permitting him to exercise his First Amendment rights) while also warning of a possible and unintended consequence of the specific challenge Plaintiff wanted to raise. While Plaintiff allegedly understood Defendant Remy's statements as a threat and was deterred from pursuing that particular grievance, those allegations do not plausibly establish that Defendant Remy's intent in issuing the warning was to punish or retaliate against Plaintiff for engaging in protected activity.

As Plaintiff does not allege facts showing that Defendant Remy took any adverse action "because of" his protected activity, Plaintiff does not state a viable First Amendment retaliation claim against Defendant Remy. Because this defect concerns the factual basis upon which Plaintiff's claim is based, it is unlikely Plaintiff will be able to cure through amendment.

**C. State Law Claims**

Plaintiff's state law claims have further deficiencies. The Court does not undertake an exhaustive analysis of every state law theory asserted in the Amended Complaint at this juncture.

However, the following deficient state law claims also prevent Plaintiff from proceeding on his Amended Complaint.

Specifically, Plaintiff asserts state law claims for "the tort of breach of duty" (Claims 11 and 12) and "the tort of torture" (Claim 15). Dkt. 7 at 16–17, 18. But Plaintiff identifies no authority recognizing either as an independent cause of action under Washington law, and the Court is aware of none. Instead, while "torture" is a term generally used to describe potentially tortious conduct or criminal acts, it is not a freestanding tort. *See, e.g.*, Wash. Rev. Code § 9A.36.021 (Washington statute containing "torture" as an element of the criminal offense of assault); Wash. Rev. Code § 9A.32.055 (Washington statute containing "torture" as an element of the criminal offense of homicide by abuse). Similarly, "breach of duty" is not a freestanding tort but rather an element of the tort of negligence. *See Mancini v. City of Tacoma*, 196 Wash. 2d 864, 879, 479 P.3d 656, 664 (2021) (outlining elements of negligence claim).

It is possible Plaintiff may have intended to assert tort claims for negligence by asserting "breach of duty" in Claims 11 and 12. Dkt. 7 at 16–17. But this possible interpretation of Claims 11 and 12 is undermined by the fact that Plaintiff separately asserted negligence claims in Claims 4 and 5. *Id.* at 7–8. Therefore, Plaintiff's inclusion of duplicative "breach of duty" and negligence tort claims in the Amended Complaint further illustrates the Rule 8 concerns presented by Plaintiff's pleading of repetitive and overlapping theories of liability within separately numbered counts.

As previously cautioned, this redundant, prolix pleading approach has resulted in several deficient claims, has obscured the nature of Plaintiff's potentially meritorious claims, and has rendered his Amended Complaint unsuitable for service upon Defendants. *See* Dkt. 5 at 4; *see also McHenry,* 84 F.3d at 1179 ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit.").

### D. Application to Proceed *In Forma Pauperis*

Finally, Plaintiff also filed an Application to Proceed *In Forma Pauperis* ("IFP") with his Amended Complaint. Dkt. 7-1. Because Plaintiff has already paid the filing fee in this action, his IFP Application is **DENIED as moot**. Additionally, Plaintiff is advised that IFP status permits a litigant to proceed without *prepayment* of the filing fee; it does not relieve an incarcerated litigant of the obligation to pay the fee or entitle a litigant to reimbursement of fees already paid. *See* 28 U.S.C. §§ 1915(a)(1), (b)(1).

## IV. INSTRUCTIONS TO PLAINTIFF

Because of the deficiencies described above, the Court **DECLINES** to direct service of the Amended Complaint. Instead, Plaintiff is **GRANTED LEAVE** to file a second amended complaint correcting the above-stated deficiencies on or before **September 28, 2026.**

The Court **WILL** screen the second amended complaint to determine if service upon any defendant is appropriate. The second amended complaint **MUST** contain a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Each claim for relief **MUST** be simple, concise, and direct.

The second amended complaint **MUST** be filed under the same case number as this one and will operate as a **complete substitute** for Plaintiff's prior pleadings. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). The second amended complaint **MUST** be legibly rewritten or retyped in its entirety. This means, the second amended complaint **MUST** be an original

document, not a compilation of previously submitted materials, and it **MAY NOT** incorporate *any part* of the prior complaints by reference.

Finally, failure to file a second amended complaint addressing the issues identified herein by the stated deadline **MAY** result in a **recommendation** this action be **dismissed**.

Dated this 28th day of August, 2026.

Grady J. Leupold
United States Magistrate Judge